JOHN L. RUNFT, ISB Member No. 1059
JON M. STEELE, ISB Member No. 1911
RUNFT LAW OFFICES, PLLC
1020 W. Main Street, Suite 400
Boise, Idaho 83702
Tel: (208) 333-8506
Fax: (208) 343-3246
jlrunft@runftlaw.com

FILED AUG 05 '04 PM 02:02 USCT ID

FEE PAID
17101

MICHAEL E. ROSMAN, D.C. Bar No. 454002
(*Pro Hac Vice* application forthcoming)
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW Suite 300
Washington, DC 20036
Phone: (202) 833-8400
Fax: (202) 833-8410
rosman@cir-usa.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

-----------------------------------------------------------------------------x

ERIC MUELLER and CORISSA D. MUELLER, husband and wife,       :
individually, and on behalf of TAIGE L. MUELLER,
a minor, and on behalf of themselves and those similarly situated,       :

      Plaintiffs,

              v.       :

APRIL K. AUKER, KIMBERLY A. OSADCHUK, JANET A.       :
FLETCHER, BARBARA HARMON, LINDA RODENBAUGH,
THE CITY OF BOISE, DALE ROGERS,       :
TED SNYDER, TIM GREEN, RICHARD K. MacDONALD,
and ST. LUKE'S REGIONAL MEDICAL CENTER,       :

      Defendants.       :

-----------------------------------------------------------------------------x

CIV 04 - 399 - S - BLW

Case No. _____

DEMAND FOR
JURY TRIAL

COMPLAINT

1.    This is an action for damages for deprivation of constitutional rights leading to

ORIGINAL

emotional distress and mental anguish suffered by Plaintiffs, and in addition, for physical pain suffered by Taige L. Mueller, a minor.

## PARTIES

2.     Plaintiffs Eric Mueller and Corissa D. Mueller are husband and wife and the natural parents and custodians of Taige L. Mueller, a minor child.

3.     The Idaho Department of Health and Welfare, is a department of the executive branch of the Idaho State government (I.C. §67-2402).  At all times pertinent hereto, Defendants April K. Auker, Kimberly A. Osadchuk, Janet A. Fletcher, Barbara Harmon, and Linda Rodenbaugh were employees of the Idaho Department of Health and Welfare and acted under color of state authority with respect to the actions described herein.  They are being sued in their individual and official capacities.

4.     Defendant City of Boise, is an Idaho municipal corporation and political subdivision of the state of Idaho, organized and empowered pursuant to Title 50 of the Idaho Code.  At all times pertinent hereto, Defendants Dale Rogers, Ted Snyder, and Tim Green (the "City Defendants") were employees of the City of Boise, and acted under color of state authority with respect to the actions described herein.  Their actions were pursuant to the general policy of the City of Boise Police Department.

5.     St. Luke's Regional Medical Center ("St. Luke's") is a hospital in the City of Boise.  Dr. Richard K. MacDonald is a medical doctor and an employee of St. Luke's.  Upon information and belief, throughout the events that are described below, defendant MacDonald

2

acted under the color of state law, and assumed the mantle of the state, because the state delegated to him decisions concerning the propriety of the state taking custody of Taige Mueller.

6.     Alternatively, upon information and belief, defendant MacDonald acted under color of state law by conspiring with state officials to take actions that constituted a deprivation of plaintiffs' constitutional rights.

## JURISDICTION

7.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over any state law claims.

## STATEMENT OF FACTS

8.     Eric Mueller and Corissa Mueller, husband and wife, are the natural parents of, and have custody of their sons, Von Mueller and Noah Jaden Mueller, and their daughter, Taige L. Mueller, and they reside, and have continually resided, at 3303 S. North Church Place, Boise, Idaho, 83706, since September, 2001.

9.     At approximately 10:15 p.m. on August 12, 2002, Corissa Mueller brought her daughter, Taige Mueller, to St. Luke's Emergency Room ("E.R."), because Taige had a low grade fever. Corissa suspected that Taige was suffering from the same malady that her entire family experienced that week, which involved low grade temperatures and nasal congestion. Taige's temperature was 100.8° F., and she had not nursed well that day. However, since

3

Taige was only 5 weeks old, Corissa took Taige to the St. Luke's E.R.

10.     Upon admission to St. Luke's E.R., Corissa explained the foregoing matters to the emergency room physician, defendant MacDonald, and informed him that Taige had been under the care of her naturopath physician, Dr. Karen Erickson, and that she desired to be in contact with Dr. Erickson throughout the night.  She was told to use the hospital phones to make these calls rather than the cell phone.

11.     Corissa had advised defendant MacDonald that Dr. Erickson had explained to her the tests and procedures that St. Luke's E.R. would want to perform on her daughter, and that, in concert with Dr. Erickson's advice, she desired to wait until she had an opportunity to discuss with Dr. Erickson the lab results from the initial tests before the administration of any antibiotics or any spinal tap.  Further, Corissa explained to defendant MacDonald her concerns from her own research regarding injecting her 5 week old baby with antibiotics and performing a spinal tap on the infant.  Corissa did request and consent to a urinalysis, blood test, chest x-ray, and an IV for nourishment, all of which were performed.

12.     Defendant MacDonald stated that it was hospital protocol to administer antibiotics and a spinal tap to infants six weeks and younger who have a temperature of 100.4° F. or above.  He told Corissa that there was a 5% risk of meningitis associated with flu-like symptoms.

13.     In assessing the contrasting risks of antibiotics and a spinal tap against the slight risk of meningitis in light of the flu-like symptoms that all of her family had suffered,

Corissa did not consent to the administration of antibiotics or a spinal tap at this time, and stated that she wanted to wait until the lab results were returned on the initial tests.

14.     During this period, Corissa contacted Dr. Erickson several times.

15.     Corissa's decision not to give antibiotics and not to have an invasive and potentially dangerous spinal tap performed on her five week old child was reasonable under the circumstances, and well within her prerogative as parent of Taige Mueller.  Each of the defendants knew or should have known that it was reasonable.

16.     When the lab results came back all negative and normal, Corissa contacted Dr. Erickson and discussed her progress further.  At approximately 12:23 a.m., on August 13, 2003, following administration of fluids to her daughter, Taige's temperature had dropped to 98.9° F.  At that time Taige was nursing well and the rash she had developed was less severe. At approximately 1:30 a.m. on Thursday, August 13, 2002, Corissa asked a nurse if he would begin the discharge procedure, since she wanted to take Taige home if her temperature continued to remain down.

17.     Unbeknownst to Corissa, defendant MacDonald had called Child Protective Services ("CPS") of the Idaho Health and Welfare Department and was planning to enforce hospital protocol without her permission by having the state remove legal custody of Taige from Corissa and Eric.

18.     Neither defendant MacDonald nor anyone else at St. Luke's nor anyone associated with CPS nor any of the City Defendants attempted to contact, or did contact, Eric

Mueller before he was deprived of custody of his child.

19.    Sometime after 1:00 a.m., defendant MacDonald came in with defendant Rogers, who introduced himself to Corissa.  Defendant Rogers advised Corissa that, although she was not being accused of child abuse, she was endangering her child by postponing the antibiotics and spinal tap.  Corissa attempted to explain to him her reasoning for postponing and avoiding these procedures and her view regarding the conflicting dangers involved.  Defendant Rogers then threatened to declare Taige in imminent danger.

20.    At approximately 1:40 a.m., defendant MacDonald came in and requested to take Taige's temperature.  Corissa handed the child to him on the table so he could take the temperature.  Defendant MacDonald said "It's 101."  Corissa said that she would speak with Dr. Erickson, and walked toward the telephone with the intent of conferring with Dr. Erickson about the possibility of going ahead with the administration of antibiotics because of the rise in Taige's temperature that defendant MacDonald reported.

21.    Neither defendant MacDonald nor the police officers conferred any further with Corissa or gave her an opportunity to consent to the administration of antibiotics in light of the alleged change of Taige's temperature.  Neither defendant MacDonald nor the police officers inquired concerning Taige's feeding history.

22.    Instead, Detective Rogers stepped in front of her preventing her access to the telephone and shoved a form "Notice to the Court" (Idaho Code § 16-1613) into her mid-section stating that the child had been seized and removed to a shelter.  Corissa turned around

6

to see her child being taken away by defendant MacDonald, and she was dragged protesting down the hall by two police officers, defendants Green and Snyder.

23.     Defendant MacDonald did not have a reasonable belief that Corissa's and/or Eric's legal guardianship of Taige had been properly taken away.

24.     Corissa demanded that her baby, a nursing infant, be returned to her.  She repeatedly asked to use the telephone to call her husband and Dr. Erickson, and was continually denied the use of the telephone by the police officers.  Instead, the police officers threatened to handcuff her.  Green and Snyder invited her to leave and asked her when she was going to go home.  She repeatedly stated and explained to the officers that she was refusing to leave her baby, because the child had only nursed, had not been on a formula, and that allergies and intolerance to bovine milk ran in the family.  She was determined to try to protect her child from even greater injury by mishandling or misfeeding since neither defendant MacDonald nor anyone else in the hospital had inquired into the nursing and feeding of the child prior to her being seized.

25.     Around approximately 2:30 a.m., defendant April Auker, a social worker employed by the Department of Health and Welfare, arrived with the Department Consent Form.  Corissa questioned her regarding the need for consent to anything, since they had already taken custody of her daughter.  At this point, Rogers told Auker to leave.  Then defendant Rogers told Corissa that the consent had to do with her Court date.  When Corissa asked defendant Rogers to have the social worker return with the form so she could look it over, defendant Rogers would not allow defendant Auker to return, saying to Corissa: "No,

7

you get one chance at this. You need to do it right." During this time defendant Rogers repeatedly threatened to handcuff and jail Corissa for being emotional and for trying to use the telephone. She was physically and verbally bullied by defendant Rogers. Again, the police officers asked her if she planned to leave the hospital and she reiterated that she refused to leave her child.

26.    Defendant MacDonald administered antibiotics and steroids to Taige without Corissa's or Eric's consent. Administering steroids was not standard hospital protocol and no one had previously asked Corissa for consent to administer steroids to Taige.

27.    Following the exchange with defendant Rogers, the on-call social worker, defendant Auker, consulted with defendant Barbara Harmon. After consulting with Harmon, Auker signed two medical consent forms in defendant Linda Rodenbaugh's name: (1) a Department of Health and Welfare "consent for medical surgical treatment," which defendant Rogers witnessed and (2) St. Luke's hospital "medical center consent." Following these consents, defendant MacDonald performed a spinal tap on Taige. Ultimately, the tests showed there was no sepsis and no meningitis.

28.    Eventually, around 3:00 a.m. the officers allowed Corissa to use the telephone and she called her husband and Dr. Erickson several times. At some time after 3:00 a.m., a member of the hospital staff came and asked her for information regarding feeding the infant. She explained that Taige had only nursed and had not had any formula, and might be allergic as was Taige's brother, to certain foods.

8

29.     Still later, a pediatrician, Dr. Noreen Womack, came to speak to Corissa. Taige's care had been turned over to Dr. Womack.  Corissa explained her concern regarding the nursing of the infant.  Dr. Womack then discussed the possibility of Corissa nursing the child.  At about 4:00 a.m., 2 hours and 20 minutes after the child had been seized, Corissa was reunited with the infant and nursed her.

30.     The next day, defendant Osadchuk tried to get Corissa to consent to the procedures that had been performed the previous night.

31.     Upon information and belief, defendants Rodenbaugh and Fletcher are supervisors within CPS, and authorized the acts of defendants Auker, Osadchuk, and Harmon.

32.     Eric and Corissa Mueller were forced to retain an attorney to regain the custody of Taige on August 21, 2002.  The neglect case against the Muellers was dismissed.

33.     Upon information and belief, defendants conspired together to achieve the goal of illegally depriving the Muellers of custody of Taige in order to perform an unauthorized and invasive medical procedure on her, to prevent the Muellers from interfering with that procedure, and to induce them to consent to this illegal conduct after the fact.  Each of the defendants took or authorized acts, as described above, to effect the goal of the conspiracy.

## CLASS ACTION ALLEGATIONS

34.     With respect to their claims for forward-looking injunctive and declaratory relief, plaintiffs seek to represent a class pursuant to Rule 23(b)(2), of all individuals who

bring children into emergency rooms of hospitals, or will do so in the future.  As a consequence of defendants' unconstitutional policies, members of this class are in danger of having custody of their children unconstitutionally taken from them when they make reasonable medical decisions for their children's care.

35.     The class is sufficiently numerous that joinder of all members is impracticable.

36.     There are questions of law common to the class, *viz.*, whether the policy of depriving parents of custody of their children in the absence of imminent harm violates the Constitution.

37.     Plaintiffs' claims are typical of those of the class they seek to represent, and they are adequate representatives of that class.

38.     Defendants have acted and/or threaten to act on grounds generally applicable to the class thereby making appropriate final injunctive or corresponding declaratory relief.

## FIRST CAUSE OF ACTION

39.     Plaintiffs incorporate the allegations set forth in paragraphs 1-38 of this complaint.

40.     Defendants conspired to deprive, acted in concert to deprive, and did deprive plaintiffs Eric and Corissa Mueller of their constitutional right to liberty without due process under the Fourteenth Amendment to the United States Constitution by depriving them of their parental rights of custody.

10

41.   Plaintiffs Eric and Corissa Mueller are entitled to damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

42.   Plaintiffs incorporate the allegations set forth in paragraphs 1-41 of this complaint.

43.   In furtherance of defendants' conspiracy, the City Defendants deprived Mrs. Mueller of liberty without due process of law, and subjected her to an unreasonable seizure, by unreasonably restraining her movements.

44.   Corissa Mueller is entitled to damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

45.   Plaintiffs incorporate the allegations set forth in paragraphs 1-44 of this complaint.

46.   Defendants conspired to deprive, acted in concert to deprive, and did deprive Taige Mueller of her liberty without due process of law and subjected her to an unreasonable seizure by taking her against her parents' will.

47.   Plaintiff Taige Mueller is entitled to damages in an amount to be determined at trial.

FOURTH CAUSE OF ACTION (FOR INJUNCTIVE RELIEF)

48.     Plaintiffs incorporate the allegations set forth in paragraphs 1-47 of this complaint.

49.     Plaintiffs bring this claim for themselves and on behalf of the previously-identified class.

50.     The Idaho Department of Health and Welfare's policy, as implemented by defendant Rodenbaugh and others, is to take custody of children away from their parents under circumstances and conditions that violate those parents' constitutional rights.  The City of Boise assists the Department's employees in effecting this policy in a fashion similar to the way they enforced it against Corissa Mueller.

51.     The Muellers have three children, including a son (Noah) born very recently. They use the emergency rooms of hospitals for medical care.  Unless defendants are enjoined, there is a reasonable likelihood that the Muellers will again be subjected to unconstitutional conduct.  Accordingly, this Court should issue an injunction preventing defendants from engaging in unconstitutional conduct.

FIFTH CAUSE OF ACTION

52.    Plaintiffs incorporate the allegations set forth in paragraphs 1-51 of this complaint.

53.    Section 16-1612(a)(1) of the Idaho Code permits the removal of a child from his or her custodian.  That section is unconstitutional, and has been applied in an unconstitutional manner, because it does not require authorization of a court for removal where time reasonably permits, in violation of the due process clause of Fourteenth Amendment of the United States Constitution.

54.    Accordingly, this Court should declare that section unconstitutional and enjoin its use in an unconstitutional manner.

SIXTH CAUSE OF ACTION (against St. Luke's and MacDonald)

55.    Plaintiffs incorporate the allegations set forth in paragraphs 1-54 of this complaint.

56.    Defendants MacDonald and St. Luke's, whether acting under color of state law or otherwise, committed a battery on Taige Mueller in violation of Idaho common law.

57.    Plaintiffs are entitled to damages in an amount to be determined at trial.

SEVENTH CAUSE OF ACTION (against St. Luke's and MacDonald)

58.    Plaintiffs incorporate the allegations set forth in paragraphs 1-57 of this complaint.

13

59.     Defendants St. Luke's and MacDonald, whether under color of state law or otherwise, conspired with the other defendants to improperly arrest or imprison Corissa Mueller.

60.     The City Defendants did improperly arrest or imprison Corissa Mueller in violation of Idaho common law.

61.     Corissa Mueller is entitled to damages in an amount to be determined at trial.

EIGHTH CAUSE OF ACTION (against St. Luke's and MacDonald)

62.     Plaintiffs incorporate the allegations set forth in paragraphs 1-61 of this complaint.

63.     Defendants St. Luke's and MacDonald, whether under color of state law or otherwise, conspired with the other defendants to wrongfully interfere with Eric and Corissa Mueller's custodial rights with respect to Taige.

64.     Defendants did wrongfully interfere with Eric and Corissa Mueller's custodial rights with respect to Taige.

65.     Eric and Corissa Mueller are entitled to damages in an amount to be determined at trial.

14

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of not less than 12 persons on all claims and causes of action triable as of right before a jury.

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

A.      Damages in an amount to be proven at trial;

B.      An injunction preventing defendants from removing custody of children from parents where prohibited by the Constitution;

C.      A declaration that the removal provisions of Idaho Code § 16-1612 is unconstitutional as applied by defendants and enjoining its use by defendants to effect removal of custody from parents;

D.      Pursuant to 42 U.S.C. § 1988, and any other relevant authority, an award of reasonable costs and expenses, including attorneys' fees; and

E.      Such other and further relief as is just and equitable.

DATE: August 4, 2004

JOHN L. RUNFT
JON M. STEELE
RUNFT LAW OFFICES, PLLC
1020 W. Main Street, Suite 400
Boise, Idaho 83702
Tel: (208) 333-8506
Fax: (208) 343-3246


MICHAEL E. ROSMAN
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW Suite 300
Washington, DC 20036
Phone: (202) 833-8400
Fax: (202) 833-8410

16