IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC MUELLER and CORISSA D. MUELLER, Husband and Wife, Individually, and on behalf of TAIGE L. MUELLER, a Minor, and on behalf of Themselves and Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APRIL K. AUKER; KIMBERLY A. OSADCHUK; JANET A. FLETCHER; BARBARA HARMON; LINDA RODENBAUGH; THE CITY OF BOISE; DALE ROGERS; TED SNYDER; TIM GREEN; RICHARD K. MacDONALD; and ST. LUKE'S REGIONAL MEDICAL CENTER,<br><br>Defendants. | Case No. CV-04-399-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it a motion to clarify filed by the plaintiffs and motions to reconsider filed by the State and the City.  The motions are fully briefed and at issue. For the reasons explained below, the motions will be largely denied, although the Court will grant that part of the State's motion seeking to absolve the individual State defendants from personal liability.

**Memorandum Decision & Order – Page 1**

1.      **Standard of Review – Motions for Reconsideration**

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress.  The former principal has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979).  While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone.  Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."  *Messinger v. Anderson*, 225 U.S. 436, 444 (1912).  "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous.  There is no need to await reversal."  *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988).  "Courts have distilled

**Memorandum Decision & Order – Page 2**

various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice."   *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007).  If the motion to reconsider does not fall within one of these three categories, it must be denied.

## 2.   <u>State's Motion</u>

The State argues first that *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) is limited to investigatory physical examinations, and therefore does not dictate that notice be given to the parents in this case.  In its prior decision, this Court recognized that difference but held that *Wallis* nevertheless applied to this case. *Wallis* based its analysis on the "right to family association includ[ing] the right of parents to make important medical decisions for their children," and to "be with their children while they are receiving medical attention . . . ."  *Id*. at 1141-42. This broad language goes beyond simply granting limited rights to criminal suspects.  The Court decided that notice was required not simply to provide an opportunity to be heard but also to effectuate the liberty interest in parental rights and family association during medical treatment.  *Wallis* applies to this case and dictates that notice be given.

**Memorandum Decision & Order – Page 3**

The State next argues that if *Wallis* applies, it held that the requirement to give notice was excused when there was "some urgent medical problem . . . requiring immediate attention," as was the case here.  *Id*. at 1141.  Again, the Court disagrees.  The record shows that over an hour elapsed between the time that Taige was taken from Corissa and the time that the spinal tap was performed.  During that hour or so, Eric was available by telephone, and there was no evidence that notice to Eric would have placed Taige in any danger, either from having to wait for his presence or for some other reason.  The Court therefore concluded as a matter of law that there was no urgent medical problem that prevented notice.  The Court finds no reason to reconsider that decision.

The State also seeks "clarification as to whether this constitutional right from *Wallis* applies to *any and all* medical treatment provided to children in its protective custody."  *See State's Brief* at p. 8 (emphasis in original).  The State then poses various hypotheticals to test the scope of *Wallis's* holding.  *See State's Brief* at p. 8 (asking "[d]oes it apply to a routine check-up . . . [or] to a kindergarten physical exam for entry into school?").

The Court defined the scope of its decision as dealing with "a situation where a physician is insisting on emergency medical treatment of a minor child over the objection of that child's parents where there is no evidence of abuse or

neglect and the parents' objections are not religiously based." *See Memorandum Decision* at p. 33.  To render a decision on the State's hypotheticals would be to issue an advisory opinion, an act beyond this Court's jurisdiction.  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (holding that "[o]ur role is neither to issue advisory opinions nor to declare rights in hypothetical cases . . . .").

The State next argues that *Wallis* does not apply after the State obtained custody of Taige.  Yet *Wallis* does continue to apply because it held that the scope of the intrusion must be reasonably necessary to avert the imminent danger. *Wallis*, 202 F.3d at 1138.  This requires, as the Court held, that the State understand the officer's imminent danger decision to ensure that the scope of the State's "intrusion," *i.e.*, the length and scope of the State's custody of the child, does not exceed that necessary to avert the imminent danger.

The State asserts that it must retain custody until the statutory Shelter Hearing is held.  However, the State cites no authority for that argument, and none exists in the Idaho statutes.  Indeed, the State and the City part company on this particular issue.  The City filed a short brief stating that it has "been unable to locate any authority indicating the State cannot return the child prior to the Shelter Care hearing." *See City Brief* at p. 4.  The Court agrees.  The Court held here that

the grounds for seizing Taige had ended more than 24 hours before the Shelter Hearing, and that the continuation of custody until that hearing was an intrusion beyond that reasonably necessary to avert the imminent danger.  The Court reaffirms that holding here.

The State seeks clarification as to whether the Court found, as a matter of law that the State communicated too broad a consent.  The Court expressly so found, *see Memorandum Decision* at p. 60, and reaffirms that finding here.

Finally, the State seeks summary judgment for the individual state defendants that they are not personally liable in any way.  The plaintiffs agree, and the Court will grant this part of the motion to reconsider.  The remainder shall be denied.

### 3.    <u>City's Motion</u>

The City repeats the argument of the State that *Wallis's* notice requirement is limited to investigatory physical examinations of the child.  The Court's analysis of the State's argument applies with equal strength here.

The City asserts that the requirement of pre-deprivation notice "would not provide Eric Mueller with any due process."  *See City Brief* at p. 8.  However, as stated above, the Court decided that notice was required not simply to provide a procedural opportunity to be heard but also to effectuate Eric's and Taige's

**Memorandum Decision & Order – Page 6**

substantive liberty interest in parental rights and family association during medical treatment.

The City argues that notice to Corissa was notice to Eric.  Parents are not, however, mere business entities where notice to one is notice to all under every circumstance as a matter of law.  The circumstances here warranted requiring that each parent receive notice.  Corissa and Eric were not together, and Corissa – the parent who was present – was, by the City's own account, emotionally distraught.  It would have taken Officer Rogers but a few minutes to notify Eric that he was considering seizing Taige and to give Eric an opportunity to provide information.  There was time to do so.

Under these circumstances, *Wallis* requires separate notice to each parent for two reasons.  First, each parent holds a separate constitutional right to family association.  *Wallis*, 202 F.3d at 1142 n. 14 (stating that "the claims [to the right of family association] of each family member must be assessed separately").  Second, the officer must pursue "reasonable avenues of investigation," and one of those reasonable avenues would have been to call the father for information as well as notice.  *Id*. at 1138.

The City argues that the State alone should be responsible for failing to give post-deprivation notice since the City had turned over Taige's custody to the State

**Memorandum Decision & Order – Page 7**

by that time.  However, the City and the State share responsibility for post-deprivation notice because both participated in the deprivation.

The City claims that Eric did receive post-deprivation notice from Barbara Harmon who worked for the State.  The City cites plaintiff's Statement of Undisputed Facts at paragraph 36.  However, that paragraph states that the call came "around 3:00 a.m. on August 13th," which was also the same time when Dr. Macdonald was conducting the spinal tap.  *See Memorandum Decision* at p. 18. Thus, Harmon's call would not have allowed Eric to effectuate his right of family association to be present at the Hospital during Taige's treatment.

The remainder of the City's claims were resolved in the Court's earlier decision and need not be repeated here.  For all these reasons, the Court will deny the City's motion.

**4.**   **Plaintiffs' Motion to Clarify**

Plaintiffs seek clarification concerning their fourth and fifth claims for relief, which sought injunctive and declaratory relief.  Count four seeks an injunction against the City and State on the ground that its policies are unconstitutional, and seeks to permanently enjoin the City from "unconstitutionally taking custody of children away from a parent."  Count five seeks a declaration that the Idaho Code section 16-1608(1)(a) (allowing removal of an endangered child) is

**Memorandum Decision & Order – Page 8**

unconstitutional.  This latter claim was limited by the Court (in an earlier decision) to an "as applied" claim.

These two claims cannot be resolved until the trial is held.  Both claims are in the nature of remedies, and must therefore await final rulings on all liability issues.  Questions of fact remain on the following issues:  (1) whether the plaintiffs' constitutional rights were violated when Officer Rogers declared Taige in imminent danger; (2) whether Officer Rogers had time to call a judge; (3) whether the City's policy not to have officers call judges caused any constitutional violation; and (4) whether the City failed to train its officers properly.[1]

With this, the Court will deny the plaintiffs' motion to clarify as set forth above.

## 5.    Dr. Macdonald's Motion

Dr. Macdonald seeks clarification or reconsideration of the Court's decision. The Court denied Dr. Macdonald's motion for summary judgment and so all claims remain against him – no claims were dismissed.  The Court also held that all these claims boil down to a single issue: Whether Dr. Macdonald told Detective Rogers that Taige had a 5% risk of death or a 5% risk of serious bacterial infection.  If it is

---

[1]  While both sides request summary judgment on the training issue, the Court finds questions of fact preclude summary judgment on this issue.

**Memorandum Decision & Order – Page 9**

the former, that finding may be grounds a reasonable juror could conclude, depending on how the testimony of expert Dr. Shapiro is evaluated and other factors, that Dr. Macdonald exaggerated the risk to Taige in order to use Detective Rogers' statutory authority to secure medical treatments for Taige.

Dr. Macdonald seeks dismissal of the § 1983 conspiracy claim because he cannot conspire with police officers or State officials who have been granted qualified immunity.  However, plaintiffs' § 1983 claim does not depend on a strict finding of conspiracy and so the Court declines to reconsider its decision denying summary judgment.

Finally, Dr. Macdonald seeks reconsideration of the Court's decision that questions of fact exist over the 5% issue.  The Court discussed this issue at length in its original decision and continues to hold that questions of fact remain that must be resolved by a jury.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to alter or amend filed by the State (Docket No. 284) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks a ruling that the individual State defendants are not personally liable.  It is denied in all other respects.

**Memorandum Decision & Order – Page 10**

IT IS FURTHER ORDERED, that the motion to clarify and reconsider filed by Dr. Macdonald (Docket No. 285) is DENIED.

IT IS FURTHER ORDERED, that the motion to reconsider filed by the City (Docket No. 286) is DENIED.

IT IS FURTHER ORDERED, that the motion to clarify filed by plaintiffs (Docket No. 290) is DENIED as set forth above.

DATED:  **June 7, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge