Richard E. Hall, ISB No. 1253
reh@hallfarley.com
Keely E. Duke, ISB No. 6044
ked@hallfarley.com
**HALL, FARLEY, OBERRECHT & BLANTON, P.A.**
702 West Idaho Street, Suite 700
Post Office Box 1271
Boise Idaho 83701
Telephone: (208) 395-8500
Telefax: (208) 395-8585
W:\1\1-817.64\TRIAL\Brief - Trial Final.doc

Attorneys for Defendant Richard K. Macdonald

### UNITED STATES DISTRICT COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| ERIC MUELLER and CORISSA D. MUELLER, husband and wife, individually, and on behalf of TAIGE L. MUELLER, a minor, and on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> APRIL K. AUKER, KIMBERLY A. OSADCHUK, JANET A. FLETCHER, BARBARA HARMON, LINDA RODENBAUGH, THE CITY OF BOISE, DALE ROGERS, TED SNYDER, TIM GREEN, RICHARD K. MACDONALD, and ST. LUKE'S REGIONAL MEDICAL CENTER, <br><br> Defendants. | Case No. CIV 04-399-S-BLW <br><br> **DEFENDANT RICHARD K. MACDONALD'S TRIAL BRIEF** |

Defendant Richard K. Macdonald, M.D. ("Dr. Macdonald"), by and through his counsel

of record, Hall, Farley, Oberrecht & Blanton, P.A., submits the following trial brief.

## I.    INTRODUCTION

This case arises from an experienced emergency room physician's mandatory statutory

obligation to report his reasonable suspicion that his sick newborn patient, 5 week old Taige

Mueller, was the subject of medical neglect by her mother, Corissa Mueller.  When Corissa

Mueller chose to take young Taige to St. Luke's Regional Medical Center ("St. Luke's") on

August 12, 2002 and, despite not having a medical education or medical training, chose to ignore

the medically necessary care and treatment of Taige, both she and Idaho law left Dr. Macdonald

no choice but to advocate for this defenseless newborn patient.  Given Dr. Macdonald's concerns

about the serious illnesses Taige could have, and despite Mrs. Mueller's refusal to consent to a

medically necessary test that could define the time sensitive treatment Taige needed, Dr.

Macdonald did not have the luxury to play Mrs. Mueller's game of chance and roll the dice with

Taige's life and well-being; Dr. Macdonald's concerns regarding the serious illness that Taige

could have, and the time sensitive treatment that would be needed, were continually rejected by

Mrs. Mueller's refusal to consent to the medically necessary test that could definitively

determine Taige's condition.

Therefore, in accordance with Idaho law, Dr. Macdonald contacted the St. Luke's social

worker, Robert Condon.  Mr. Condon then reported this issue to the Idaho Department of Health

and Welfare ("State") and the Boise Police Department ("City").  Mr. Condon and Dr. Macdonald

participated in the ensuing investigation as to whether the City would declare Taige to be

imminent danger and, in the event that imminent danger was declared, whether the State would

consent to treatment for Taige.  Ultimately, Dale Rogers, a police detective with the City,

declared Taige to be in imminent danger and transferred temporary custody of Taige to the State.

The State consented to additional testing and the administration of antibiotics and steroids, all of

which were required courses of testing and treatment pursuant to the applicable standard of

medical care.  Such additional testing and treatment was provided by Dr. Macdonald and St.

Luke's; Mrs. Mueller was away from Taige for less than two hours.  Thankfully, Taige did not

DEFENDANT RICHARD K. MACDONALD'S TRIAL BRIEF - 2

have meningitis or any other serious illness and was not harmed by any of the medical care and treatment she received at St. Luke's on August 12 and 13, 2002.

Taige's parents subsequently sued the State, the City, Dr. Macdonald, and St. Luke's. The only remaining claims against Dr. Macdonald are as follows: (1) knowingly making a false report of child abuse; (2) battery against Taige; (3) conspiracy to unreasonably seize Taige; (4) conspiracy to falsely arrest or imprison Mrs. Mueller; and (5) conspiracy to deprive Mrs. Mueller of her parental rights to custody by not allowing her to make medical decisions for Taige and by not allowing the family to be together during medical procedures. As stated by the Court, all plaintiffs' claims fail if the jury finds that Dr. Macdonald did not knowingly mislead Detective Rogers with respect to his assessment of the risks that faced Taige on August 12 and 13, 2002. [Dkt. No. 282].[1]  The Muellers will be unable to uphold their burden of proof at trial and Dr. Macdonald is entitled to a verdict in his favor.

## II.   STATEMENT OF FACTS

By way of background, the Muellers moved to Boise sometime in 2001 from Austin, Texas to work at Micron. Their daughter Taige was born at home in 2002.[2]  The Muellers currently reside in the State of Hawaii.

On August 12, 2002, Corissa Mueller, was concerned about her daughter Taige. Taige had a fever, was fussy and had not been nursing well during the day. During the evening of August 12, 2002, Mrs. Mueller called her naturopathic care provider, Ms. Karen Erickson, on a

---

[1] "[T]here would be no evidence that Dr. Macdonald mislead Detective Rogers if the jury believes Dr. Macdonald that he told Detective Rogers that Taige had a 5% risk of a serious bacterial infection. Rather, the evidence would be simply that Dr. Macdonald was (1) reasonably assessing the risk, and (2) following the local standard of care, deviation form which would expose him to a malpractice action. In this situation, all of the Muellers' state law claims would fail." [Dkt. No. 282, p. 59]. The Court went further and stated that Dr. Macdonald could not have participated in any of the constitutional violations asserted against Detective Rogers, and that Dr. Macdonald was entitled to rely upon Ms. Auker's consent to medical treatment. [Dkt. No. 282, p. 59-60].

[2] At the time of deposition the Muellers had three children and Mrs. Mueller was pregnant with their fourth. Taige is their second child.

couple of occasions regarding Taige's medical condition. Ms. Erickson indicated the Muellers should take Taige to the hospital and she advised them that the hospital would recommend a lumbar puncture,[3] the administration of antibiotics, and a full septic work-up.[4]

Around 10:00 p.m. that evening, Corissa and Eric Mueller decided Taige should go to the hospital for an evaluation. Eric remained at the Mueller home with the couple's older son while Corissa took Taige to the emergency room at St. Luke's hospital. At the time Taige arrived at the hospital her fever was 101.3, she was noted to be ill in appearance, slightly lethargic and fussy, with delayed capillary refill and a slight rash. As expected, after examining Taige Dr. Macdonald recommended a full septic work-up, along with a lumbar puncture and the administration of IV fluids and antibiotics. Dr. Macdonald's biggest concern, which he repeatedly expressed to Mrs. Mueller, was that Taige had a bacterial illness that was life threatening.

Against Dr. Macdonald's advice, Mrs. Mueller would only consent to some of the treatment Dr. Macdonald recommended; specifically, she would not consent to the lumbar puncture or the administration of antibiotics. After several failed attempts to gain Mrs. Mueller's full consent to diagnose and treat Taige's fever, Dr. Macdonald contacted Dr. Noreen Womack, a pediatric physician with privileges at St. Luke's. Dr. Womack agreed with Dr. Macdonald's assessment and recommendations and recommended that Dr. Macdonald contact the hospital social worker if Mrs. Mueller continued to refuse consent.

After his consultation with Dr. Womack, Dr. Macdonald again approached Mrs. Mueller with his recommendation to diagnose and treat Taige. Mrs. Mueller continued to refuse consent.

---

[3] The term lumbar puncture is synonymous with spinal tap. It is a diagnostic test whereby a sample of cerebrospinal fluid is withdrawn through a needle placed between the vertebrae. It is a test used to rule out meningitis.
[4] This would include, a CBC (complete blood count), metabolic panel, blood cultures, urinalysis, urine cultures, chest x-rays, stool cultures, and lumbar puncture along with the administration of IV fluids and antibiotics.

As such, Dr. Macdonald felt compelled to speak with Robert Condon, the hospital social worker, regarding the situation because he reasonably believed he was presented with a situation of potential medical neglect given Mrs. Mueller's repeated refusal to consent to necessary care and treatment. Mr. Condon held the same belief, and contacted two Boise City Police officers, Ted Snyder and Tim Green, who were at the hospital on an unrelated matter. Mr. Condon also contacted April Auker with the Department of Health and Welfare.

Ms. Auker from the Department of Health and Welfare and Detective Rogers from the City arrived at St. Luke's. Detective Rogers investigated the situation by talking to a number of individuals, including Dr. Macdonald. Ultimately, Detective Rogers declared Taige in imminent danger and custody of Taige was temporarily transferred to the State. April Auker then consented to Taige's medical care and treatment, which included performance of the lumbar puncture and administration of antibiotics.

At 3:38 a.m. Dr. Macdonald had completed the lumbar puncture and the administration of antibiotics was underway. At that time, he requested, as did Mr. Condon and Nurse Beseman, that Mrs. Mueller and Taige be reunited so she could be with Taige. Mrs. Mueller and Taige were taken to the pediatric ward of the hospital for admission where they were joined by Mr. Mueller. The Muellers remained in physical custody of Taige from that point forward. Legal custody was restored at a hearing the following morning.

## III.    APPLICABLE LAW

The claims remaining against Dr. Macdonald are: (1) knowingly making a false report of child abuse; (2) battery against Taige; (3) conspiracy to unreasonably seize Taige; (4) conspiracy to falsely arrest or imprison Mrs. Mueller; and (5) conspiracy to deprive Mrs. Mueller of her parental rights to custody by not allowing her to make medical decisions for Taige and by not

allowing the family to be together during medical procedures. As stated by the Court, all plaintiffs' claims fail if the jury finds that Dr. Macdonald did not knowingly mislead Detective Rogers. [Dkt. No. 282].[5]

**A.**   **Count 9 False Report of Neglect: Plaintiffs' claim of knowingly making a false report of child abuse fails because Dr. Macdonald was required by law to make a report of medical neglect and he is entitled to immunity pursuant to Idaho Code Section 16-1606.**

1.   *Dr. Macdonald was required to report any suspicions which would reasonably result in medical neglect pursuant to I.C. § 16-1605(1).*

"Any physician . . . having reason to believe that a child . . . has been . . . neglected or who observes the child being subject to conditions or circumstances which would reasonably result in . . . neglect shall report or cause to be reported . . . such conditions or circumstances to the property law enforcement agency or department." I.C. § 16-1605(1). The statute goes on to provide that "[w]hen the attendance of a physician . . . is pursuant to the performance of services as a member of the staff of a hospital or similar institution, he shall notify the person in charge of the institution or his designated delegate who shall make the necessary reports." *Id.* Accordingly, Idaho law required Dr. Macdonald to report his suspicions that Taige was being subjected to "conditions or circumstances which would reasonably result in" medical neglect to St. Luke's designated representative, Robert Condon. See I.C. § 16-1605(1).

Such was the case because, as Dr. Macdonald explained on August 12 and 13, 2002 and in his deposition, he concluded that based on Taige's age and symptoms, she could be suffering from a serious bacterial infection that could result in death or serious injury. Therefore, based on

---

[5] "[T]here would be no evidence that Dr. Macdonald misled Detective Rogers if the jury believes Dr. Macdonald that he told Detective Rogers that Taige had a 5% risk of a serious bacterial infection. Rather, the evidence would be simply that Dr. Macdonald was (1) reasonably assessing the risk, and (2) following the local standard of care, deviation form which would expose him to a malpractice action. In this situation, all of the Muellers' state law claims would fail." [Dkt. No. 282, p. 59]. The Court went further and stated that Dr. Macdonald could not have participated in any of the constitutional violations asserted against Detective Rogers, and that Dr. Macdonald was entitled to rely upon Ms. Auker's consent to medical treatment. [Dkt. No. 282, p. 59-60].

his medical education, training and experience, he knew that the standard of care required him to do a full septic work up, perform a lumbar puncture, and administer antibiotics and steroids. After confirming his concerns about the potential for a serious bacterial infection and this course of necessary and required treatment with a pediatrician, Dr. Noreen Womack, and after attempting numerous times to get Mrs. Mueller's consent to such care, Dr. Macdonald was left with no choice under Idaho law but to report his concerns of medical neglect. As such, Dr. Macdonald, as a member of the medical staff at St. Luke's reported his belief of medical neglect of Taige to a St. Luke's social worker, Robert Condon. Dr. Macdonald did so and satisfied not only his statutory obligations, but also his medical obligations to his patient, Taige Mueller.

2.      *Dr. Macdonald's failure to report any suspicions which would reasonably result in medical neglect would have constituted a misdemeanor pursuant to I.C. § 16-1605(4).*

Had Dr. Macdonald *not reported* his concerns pursuant to I.C. § 16-1605(1), he would be subjected to criminal liability. A "[f]ailure to report as required in this section shall be a misdemeanor." It is clear that the legislature's intent in enacting I.C. § 16-1605 was to require all physicians, among many others, to report suspected incidents of medical neglect. Therefore, Dr. Macdonald was placed in a situation where he must report his suspicions, or be left to face criminal liability. Dr. Macdonald acted in the best interests of his patient, Taige, and at the same time satisfied his legal obligations, thereby avoiding criminal prosecution.

3.      *Dr. Macdonald is entitled to immunity pursuant to I.C. § 16-1606.*

Dr. Macdonald is entitled to immunity for any reports based on a reasonable belief that a child has been medically neglected. "Any person who has reason to believe that a child has been . . . neglected and, acting upon that belief, makes a report of . . . neglect as required in [I.C. § 16-1605], shall have immunity from any liability[.]" I.C. § 16-1606. Therefore, Dr. Macdonald is

not liable for his reasonable belief and subsequent report that Taige may be subjected to medical neglect.

As explained above, the testimony at trial will indisputably support this position; everyone[6] present at the hospital the night of August 12 and morning of August 13 stated that Dr. Macdonald was at all times acting out of concern for his patient. Despite this, the Court stated in its February 26, 2007 Memorandum Decision and Order [Dkt. No. 282], that a question of fact remained as to whether Dr. Macdonald exaggerated the risk of death or risk of serious bacterial infection to Detective Rogers and if he did, whether he did so knowingly "in order to use Detective Rogers' statutory authority to secure medical treatments for Taige." The evidence will show Dr. Macdonald did no such thing and he accurately reported the significant risk he believed Taige faced.

Specifically, Dr. Macdonald explained on August 12 and 13, 2002 and in his deposition that "in the age group of five weeks and younger, with a fever of a certain degree and higher, that three to five percent - - as many as three to five percent in that population, could have a serious bacterial infection."[7] Dr. Macdonald further stated that he does not "know exactly who has the illness and who doesn't have the illness. That's the whole problem with this whole situation. You don't know, so you do the work-up so you can prevent missing a serious, life-threatening infection in a child of this age."[8] Accordingly, Dr. Macdonald is entitled to immunity as to all of plaintiff's claims.

---

[6] See Affidavit of Keely E. Duke in Support of Defendant Richard K. Macdonald, M.D.'s Motion for Summary Judgment (Dkt. No. 225), (Exh. A, Dkt. No. 225-4, p. 184)..

[7] See Affidavit of Keely E. Duke in Support of Defendant Richard K. Macdonald, M.D.'s Motion for Summary Judgment (Dkt. No. 225), (Exh. C, Dkt. No. 225-6, pp. 99-100).

[8] See Affidavit of Keely E. Duke in Support of Defendant Richard K. Macdonald, M.D.'s Motion to Exclude Testimony of Plaintiffs' Expert Eugene Shapiro, M.D. (Dkt. No. 226), (Exh. D, Dkt. No. 226-6, p. 140).

4.      *Dr. Macdonald Did Not Knowingly Make a False Report of Child Abuse.*

As stated previously, it is uncontroverted in the record that Dr. Macdonald was acting, at all times, in Taige's best interest. There is no evidence to show that Dr. Macdonald knowingly made a false report of neglect. Although the Court held that an issue of fact remains as to whether Dr. Macdonald knowingly exaggerated the risk to Taige Mueller, this alone is not sufficient to support a finding that Dr. Macdonald made a false report of suspected medical neglect to a child. If Taige was subjected to any risk, Dr. Macdonald was required to make a report pursuant to the statute as long as that risk was capable of resulting in harm to Taige. Both plaintiff and defendant agree that some form of risk existed; the only contention is based on the size of that risk. As long as a risk existed, Dr. Macdonald did not make a false report of suspected medical neglect to a child. The Muellers will be unable to support this claim at trial.

**B.      Count 6 Battery Against Taige: Dr. Macdonald did not batter Taige when he provided her with life-saving medical treatment because Taige's legal guardian consented to the treatment.**

"Civil battery consists of an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive." *Neal v. Neal*, 125 Idaho 617, 622, 873 P.2d 876 (1994). As such, Plaintiffs must prove the following elements with respect to their claim for battery against Dr. Macdonald: (1) Dr. Macdonald intentionally touched Taige; (2) Taige's legal guardian did not consent to the touching; (3) Dr. Macdonald knew the touching was not permitted; and (4) the touching was unlawful, harmful, or offensive. *Neal*, 125 Idaho at 622, 873 P.2d 876. "[L]ack of consent is also an essential element of battery." *Id.* (citing Prosser & W. Keeton, *The Law of Torts* § 18 at 119).

This Court has already stated that Dr. Macdonald reasonably relied on the Department of Health and Welfare's consent to medical treatment provided by April Auker and that such "analysis will guide the parties at trial." (Dkt. 282, p. 60). Specifically, the Court stated that

when the City makes a finding of imminent danger and invokes Idaho Code § 16-1612, "the State has the duty to 'secure adequate care' for the child, *see* I.C. § 16-1601, and thus is authorized to consent to medical treatment for the child." (Dkt. No. 282, pp. 31-32.) This Court went on to state that "[w]hile [April Auker's] broad consent may have violated the Muellers' constitutional rights, there is no way that Dr. Macdonald could have known this, and he was entitled to rely upon Auker's consent." (*Id.*, p. 60.) As such, it appears from the Court's February 26, 2007 order that Taige's claim for battery is no longer a viable claim against Dr. Macdonald.

To the extent the battery claim remains, Plaintiffs must prove that Dr. Macdonald "did not have a reasonable belief that the Muellers' legal guardianship had been taken away." (April 13, 2005 Memorandum Decision and Order at p. 32 (Dkt. No. 81)). Significantly, this Court has previously held that the State was entitled to rely on the City's imminent danger decision and is not liable for such decision:

> [o]nce Detective Rogers turned Taige over to the State, the State officials were entitled to rely on his imminent danger decision. Thus, the State cannot be liable for any errors made by Detective Rogers in declaring Taige in imminent danger.

(*Id.*, 47-48.) Such logic should apply to Dr. Macdonald as well given that Detective Rogers had a duty to perform an independent evaluation of whether a declaration of imminent danger should have been made.

In addition, this Court went on to hold that once the City declared Taige in imminent danger, custody was transferred to the State and, as cited above, "[t]he State has the duty to 'secure adequate care' for the child, *see* Idaho Code § 16-1601, and thus is authorized to consent to medical treatment for the child." (Dkt. No. 282, pp. 31-32.) Accordingly, regardless of whether the City's imminent danger decision was valid, the State became the legal guardian of

Taige and had the duty to "secure adequate care" for the child.  Given that the State became Taige's legal guardian, Dr. Macdonald reasonably relied on the consent provided by the State.

Lastly, Dr. Macdonald is entitled to statutory immunity, as discussed above in Section A(3), against such claim pursuant to Idaho Code § 16-1606.

**C.    Count 8 Wrongful Interference with Parental Rights:   Dr. Macdonald Did Not Wrongfully Interfere With a Custodial Right.**

Although the Idaho Supreme Court has not yet ruled whether this tort exists in Idaho, when this Court denied Dr. Macdonald's Motion to Dismiss this claim, it outlined the elements of the tort of wrongful interference with a custodial right as: "(1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his or her minor child, and (2) a party outside the relationship intentionally abducts, compels or induces a minor child to leave a parent legally entitled to its custody, or otherwise prevents the parent from exercising his or her parental or custodial rights." (Dkt. No. 81, p. 41) (*citing* Restatement (Second) of Torts, § 700; *Kessel v. Leavitt*, 511 S.E.2d 720, 765-66 (1998)).

First, as this Court previously recognized and as the record supports, Dr. Macdonald did not make the declaration of imminent danger or terminate the Muellers' parental rights: "that was a decision made entirely by Detective Rogers." (Dkt. No. 282, p. 46.)  In addition, the evidence will show that Dr. Macdonald was not involved in the discussion or decision regarding how to remove Taige from Mrs. Mueller's physical custody; rather, that was a discussion and decision held between only representatives of the City.

Second, if this tort is adopted in Idaho, it is clear the provisions of Idaho Code §§ 16-1605, -1606 would override any such claim when the "interference" is a result of Idaho's mandatory reporting of child abuse.  Such is the case given the very nature of the statute and what it requires third persons to do when faced with a concern of abuse, abandonment, or neglect

of a child. In addition, as discussed above, Idaho Code § 16-1606 provides that "[a]ny person who has reason to believe that a child has been abused, abandoned or neglected and, acting upon that belief makes a report of abuse, abandonment or neglect as required in § 16-1605, Idaho Code, shall have immunity from <u>any</u> liability, civil or criminal, that might otherwise be incurred or imposed." (emphasis added). As discussed above, Dr. Macdonald engaged in no actions beyond his legal duty pursuant to I.C. § 16-1605 and he is entitled to immunity as to all of Plaintiffs' claims.

Lastly, any allegations that the medical procedures interfered with the Mueller's custodial rights is without merit. As discussed above, Dr. Macdonald reasonably relied on the consent provided by Taige's legal custodian at the time, the State.

To the extent this tort exists in Idaho, the Muellers will be unable to prove that Dr. Macdonald intentionally interfered with their custodial rights.

**D.     Plaintiffs' Constitutional Claims Against Dr. Macdonald.**

Plaintiffs' constitutional claims against Dr. Macdonald are as follows: (1) that Dr. Macdonald "conspired to deprive, acted in concert to deprive, and did deprive plaintiffs of their constitutional right to liberty without due process under the Fourteenth Amendment of the United State Constitution, and in violation of 42 U.S.C. § 1983, by depriving Eric and Corissa of their parental rights of custody, by depriving Taige of her right to have her parents make important medical decision for her, and by depriving all of them of their rights to be together during medical procedures" (Dkt. No. 215, p. 13); (2) that Dr. Macdonald "conspired to deprive, acted in concert to deprive, and did deprive Taige Mueller of her liberty without due process of law and subjected her to an unreasonable seizure by taking her against her parents' will in violation of 42 U.S.C. § 1983" (Dkt. No. 215, p. 14); and (3) that Dr. Macdonald "whether under

color of state law or otherwise, conspired with the other defendants to improperly arrest or imprison Corissa Mueller" (Dkt. No. 215, p. 17).

Plaintiffs' constitutional claims against Dr. Macdonald fail for the following reasons.

1.    *Dr. Macdonald was not a state actor.*

As this Court previously stated, "[i]n order to prevail on their § 1983 conspiracy claim against Dr. Macdonald, the Muellers must show that (1) he was part of a conspiracy to deprive them of their constitutional rights, and (2) in so doing, he acted under color of state law." (Dkt. No. 282, p. 56) *citing Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000). As this Court further appropriately recognized, "[f]or § 1983 purposes, a physician cannot become a state actor by complying with a legal duty to report suspected child abuse or neglect." (Dkt. No. 282, p. 58) *citing Brown v. Newberger*, 291 F.3d 81, 93 (1st Cir. 2002); *Preston v. New York*, 223 F.Supp.2d 452, 466 (S.D.N.Y. 2002) (holding that private actors do not become state actors simply by complying with legal duty to report suspected child abuse).

As discussed above, Dr. Macdonald was merely complying with a legal duty when he reported to Robert Condon that Taige was being medically neglected. Accordingly, based on this Court's previous decision (Dkt. 282) and well-established § 1983 case law, Dr. Macdonald was not a state actor and all constitutional claims against him fail.

2.    *If Dr. Macdonald is a state actor, then he is protected by the doctrine of qualified immunity.*

Dr. Macdonald is entitled to qualified immunity. The Court has already found that the City and the State are protected by qualified immunity. (See Dkt. No. 282, p. 61) (stating that "the State defendants are entitled to qualified immunity for all claims except [reversed in a later decision] . . . [and] Detective Rogers is entitled to qualified immunity for all claims against him except [reversed in a later decision.]") (*See also*, Dkt. No 312). Therefore, if Dr. Macdonald is

found to be a state actor, then he is protected by qualified immunity and no cause of action will exist for Count 1 or Count 3.

"Qualified immunity shields state officials from liability under § 1983; however, because their immunity is only qualified, their conduct is not always shielded." *Preston v. New York*, 223 F. Supp. 2d 452, 463 (S.D. N.Y. 2002). "[A] court must consider 'whether the right was clearly established,' such that 'it would be clear to a reasonable [actor] that the conduct was unlawful in the situation he confronted.'" *Preston*, 223 F. Supp. 2d at 463 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). Qualified immunity serves as a shield to public officials "for performance of discretionary functions." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009). "Qualified Immunity protects 'all but the plainly incompetent or those who knowingly violated the law." *Mueller*, 576 F.3d at 992.

Dr. Macdonald did not knowingly violate the law; nor are there any allegations that suggest that Dr. Macdonald is "plainly incompetent." If Dr. Macdonald is held to be a state actor, he should be entitled to qualified immunity for his reporting of child abuse.

*3.     Dr. Macdonald was acting in the best interests of his patient when he made the report to Robert Condon and, therefore, plaintiffs' constitutional claims fail.*

In denying Dr. Macdonald's summary judgment with respect to Plaintiffs' constitutional claims against him (Counts One and Three), this Court stated as follows: "The central accusation against Dr. Macdonald is that he misled Detective Rogers to believe that Taige faced a 5% risk of death in an effort to use Detective Rogers' statutory authority to deprive the Muellers of custody of Taige." (Dkt. No. 282, p. 57.) The Court then went on to state that "[i]f Dr. Macdonald knowingly exaggerated Taige's risk, that is substantial evidence supporting the

Muellers' assertion that he was using Detective Rogers' authority to deprive them of their parental rights." (*Id.*)

As established above, Plaintiffs will be unable to prove that Dr. Macdonald knowingly exaggerated Taige's risk and that he was trying to use Detective Rogers' authority to deprive the Muellers of their parental rights. He was acting in the best interests of his patient and pursuant to Idaho law when he made the report of medical neglect to Robert Condon. As such, plaintiffs' constitutional claims fail.

4.    *Dr. Macdonald did not conspire to deprive the Plaintiffs of their constitutionally protected rights.*

No conspiracy existed between the defendants in this action. "A civil conspiracy is a combination 'of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990). In order to prove that a conspiracy exists, the plaintiffs must show: (1) a unity of purpose or common design and understanding; or (2) a meeting of the minds in an unlawful arrangement. *Vieux*, 906 F.2d at 1343. The plaintiffs will be unable to show that (1) an agreement existed, and (2) that any of the parties involved had an unlawful purpose.

All parties agree, and this Court has held, that the sole decision-making authority regarding the declaration of imminent danger and temporary termination of the Muellers' parental rights, existed with Detective Rogers. (Dkt. No. 282, p. 46.)[9] No other party had the ability or power to declare Taige in imminent danger. Therefore, no agreement could exist because Detective Rogers' decision was made exercising his own independent judgment. Secondly, no party had an unlawful purpose. The Court implied that all parties involved were

---

[9] "In making his decision on imminent danger, Detective Rogers . . ." (Dkt. No. 282, p. 11).

acting pursuant to the Idaho Child Protective Act. (*See*, Dkt. No. 282) (where the Court engages in analysis of each parties duties and immunities pursuant to the Child Protective Act). A party cannot engage in an unlawful purpose if that party is acting pursuant to a duty or right granted by the legislature.

a.   Count 1 Fourteenth Amendment Claims:  Dr. Macdonald did not conspire to deprive the Muellers of the Fourteenth Amendment right to liberty.

The Muellers allege that Dr. Macdonald conspired to deprive them of a protected liberty interest by not allowing the Muellers to make medical decisions for Taige and by preventing the Muellers from being together during medical procedures. The Muellers will be unable to sustain these claims at trial. As discussed above, Dr. Macdonald was complying with his statutory obligations pursuant to the Idaho Child Protection Act. It is indisputable that Dr. Macdonald did not declare Taige in imminent danger, and did not prevent the Muellers from being present during Taige's medical procedures. Assuming that the plaintiffs will be able to show that a conspiracy existed, they will be unable to prove that Dr. Macdonald deprived the plaintiffs of their liberty interest without due process of law.

b.   Count 3:  Dr. Macdonald did not conspire to unreasonably seize Taige.

The plaintiffs contend that Dr. Macdonald conspired to unreasonably seize Taige. There is nothing in the record suggesting that Dr. Macdonald or anyone at St. Luke's was part of any discussion regarding how to remove Taige from her mother's physical custody.[10] Even assuming that the plaintiffs are able to show that a conspiracy existed, they will be unable to show that any seizure of Taige was unreasonable or made without the consent of Taige's legal guardian, the State. Further, Mrs. Mueller voluntarily handed Taige to Dr. Macdonald and Nurse Beseman for the purposes of examining the child. There was no seizure of Taige. Assuming that Taige was

---

[10] See *Mueller v. Auker*, 576 F.3d 979, 985 (9th Cir. 2009) (stating "Corissa Mueller requested a nurse take Taige's temperature again[.]")

seized, any seizure was reasonable under the circumstances. Dr. Macdonald was only with Taige

for the length of the procedure, and then Taige and Mrs. Mueller were physically reunited. The

plaintiffs will be unable to show that a conspiracy existed and they will be unable to show that

Taige was unreasonably seized. Dr. Macdonald is entitled to a verdict in his favor.

        c.    Count 7: There was no false arrest/unreasonable seizure of Corissa
            Mueller.

      The Court has already determined that any detention of Mrs. Mueller was necessary as a

means to maintain order with the hospital and to protect the treatment of the patients: (1) "In this

case, the Officers had to ensure order in a hospital. They also had to ensure that Taige's

treatment was not interrupted." (Dkt. No. 282, p. 42.); (2)"This confinement [by the Officers]

was an intrusion on Corissa's rights, but it was justified by the need to maintain order in the

hospital and protect the treatment of a patient." (*Id.*); (3) "For these reasons, the Court finds as a

matter of law that Detective Rogers did not violate Corissa Mueller's Fourth Amendment rights

by confining her in the room after declaring Taige in imminent danger." (*Id.*) Based on these

ruling by the Court, Dr. Macdonald is entitled to a verdict in his favor on this claim.

      Even if this claim is presented to the jury, Dr. Macdonald was not involved in Mrs.

Mueller's confinement, imprisonment, or seizure.[11] As stated a number of times throughout this

brief, the decision to declare Taige in imminent danger was Detective Roger's decision alone.

(*See* Dkt. No. 282, pp 11 and 42). Second, the Court has already determined that "as a matter of

law" the imprisonment of Mrs. Mueller was justified and necessary and, therefore, Plaintiffs are

unable to prove the necessary elements for false imprisonment. (Dkt. No. 282, p. 42). Lastly,

there is nothing in the record to support an allegation that Dr. Macdonald or anyone from St.

---

[11] See *Mueller v. Auker*, 579 F.3d 979, 985 (stating "Detective Rogers intervened and informed [Corissa that] based upon Taige's downturn that he was declaring the child in imminent danger . . . [Corissa] was halted by Officers Snyder and Green and Detective Rogers. With a police officer at each side, an emotional Corissa Mueller was physically escorted down the hallway to a small conference room.")

Luke's was involved in any discussions regarding how to serve Mrs. Mueller and how to remove Taige from her physical custody. Accordingly, in conjunction with this Court's prior decision, Count 7 is no longer an actionable claim and should not be presented to the jury.

## IV.    OBJECTIONS TO TRIAL SUBMISSIONS

Dist. Idaho Local Civil Rule 16.3(b) requires the parties to submit with their Trial Memorandum any objections to the use of depositions at trial and objections, together with the grounds of those objections, to the admissibility of materials identified as exhibits. In this matter, the parties will exchange exhibit lists simultaneously with the Trial Memorandums. Therefore, it is impossible to determine, prior to the submission of the Trial Memorandum, what exhibits the plaintiffs intend to admit, and which of those items may be objectionable. For that reason, Dr. Macdonald will supplement this Trial Memorandum within fourteen (14) days of trial and identify any objections at that time, along with any further Motions in Limine.

## V.    CONCLUSION

The plaintiffs will be unable to support their claims because they will be unable to show that Dr. Macdonald knowingly exaggerated the risk to Taige. If the jury finds that Dr. Macdonald acted in good faith, and did not knowingly exaggerate the risk, all plaintiffs' claims must fail pursuant to this Court's prior order. [See Dkt. No. 282].

DATED this 27th day of April, 2010.

**HALL, FARLEY, OBERRECHT & BLANTON, P.A.**


By _____/s/_____
Richard E. Hall
Keely E. Duke – Of the Firm
Attorneys for Defendant Richard K. Macdonald

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of April, 2010 I electronically filed the foregoing through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **Richard E Hall**
  reh@hallfarley.com klm@hallfarley.com
- **Kirtlan G Naylor**
  kgn@naylorhales.com dlr@naylorhales.com
- **W Marcus W Nye**
  nye@racinelaw.net
- **Patricia M Olsson**
  pmo@moffatt.com
  jst@moffatt.com;cld@moffatt.com;lps@moffatt.com;cjl@moffatt.com;mrsjillthompson@msn.com;ecf@moffatt.com;moffattthomas@hotmail.com
- **Michael E Rosman**
  rosman@cir-usa.org
- **John L Runft**
  jlrunft@runftlaw.com
- **J Walter Sinclair**
  jwsinclair@stoel.com
- **Jon M Steele**
  jmsteele@runftlaw.com
- **Bruce J. Castleton**
  bjc@naylorhales.com

/s/
_____
Richard E. Hall
Keely E. Duke