JOHN L. RUNFT, ISB Member No. 1059
JON M. STEELE, ISB Member No. 1911
RUNFT & STEELE LAW OFFICES, PLLC
1020 W. Main Street, Suite 400
Boise, Idaho 83702
Tel: (208) 333-8506
Fax: (208) 343-3246
jlrunft@runftlaw.com

MICHAEL E. ROSMAN, D.C. Bar No. 454002
CHRISTOPHER J. HAJEC, D.C. Bar No. 492551
CENTER FOR INDIVIDUAL RIGHTS
1233 20th St. NW Suite 300
Washington, DC 20036
Phone: (202) 833-8400
Fax: (202) 833-8410
rosman@cir-usa.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

------------------------------------------------------------------------------------x

ERIC MUELLER and CORISSA D. MUELLER, husband and wife,   :
individually, and on behalf of TAIGE L. MUELLER,
a minor, and on behalf of themselves and those similarly situated,   :

      Plaintiffs,   :

            Case No. CIV
         v.   : 04-399-S-BLW

APRIL K. AUKER, *et al.*   :

      Defendants.   :

------------------------------------------------------------------------------------x

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs' trial brief will cover the following topics: (a) a general outline of plaintiffs' case, (b) plaintiffs' case against the State Defendants (in their official capacity), (c) plaintiffs' case against the City of Boise for injunctive or declaratory relief, (d) peremptory challenges, and (e) several aspects of the jury instructions.

Before embarking upon those topics, plaintiffs wish to note that, although discovery in this matter ended quite some time ago, there are still several Rule 72 objections pending before the Court. Among other things, plaintiffs have sought to have the Office of the Ada County Prosecutor designate a witness for testimony, and plaintiffs' objections to Magistrate Judge Williams's orders granting that office a protective order have not been resolved. Doc. Nos. 257, 294. Plaintiffs reserve the right to amend some of the documents that they are submitting to the Court along with this trial brief after resolution of those objections.

I.      PLAINTIFFS' CASE: BRIEF OUTLINE

Plaintiffs' constitutional claim under Section 1983 alleges violation of three basic "due process" rights: Eric and Corissa Muellers' right to custody and control of their daughter Taige Mueller, their right to make medical decisions for their child Taige Mueller (and Taige's right to have those decisions made by her parents), and the right of their family to be together during medical procedures. Taige Mueller also claims that her Fourth Amendment right against unconstitutional seizures was violated.

The gist of this claim can be summarized as follows. When Detective Rogers concluded that Taige Mueller should have the diagnostic test (lumbar puncture) and prophylactic treatment (administration of antibiotics) that MacDonald wanted to perform, he had a choice: he could

make the decision himself or he could (with MacDonald's help) seek a court order.  Taige

Mueller was not in imminent danger of serious bodily harm, and Rogers could not reasonably

have believed that she was; accordingly, Rogers had only one *constitutional* choice, and that was

to seek an order.  When he chose to make the decision himself, he violated the Muellers' rights.

Plaintiffs allege that the City of Boise is responsible for these constitutional violations

because they were caused by (1) the policy or custom of the City police (2) the actions of a

policymaker or someone whose acts were ratified by a policymaker or (3) a failure to train.

Plaintiffs' claims against MacDonald under Section 1983 are discussed in greater detail in

the jury instructions section of this brief.  Plaintiffs assert that MacDonald acted under color of

law and either caused the constitutional violations or himself participated in them.  MacDonald's

conduct also constituted the state torts of battery, false arrest, and interference with custodial

relationships, as well as a violation of I.C. § 16-1607.  Defendant St. Luke's is liable for these

violations as MacDonald's principal and/or because others employed by St. Luke's participated

in them.

II.     PLAINTIFFS ARE ENTITLED TO DECLARATORY RELIEF AGAINST THE
        OFFICIAL CAPACITY STATE DEFENDANTS

As set forth in the accompanying motion for a bench trial with respect to plaintiffs'

claims against the official capacity State Defendants, these claims must be decided by this Court.

For the following reasons, at least declaratory relief is appropriate.

This Court already has found that the State Defendants (defendants Auker, *et al.*) violated

the Constitution in (1) authorizing treatment beyond that which was needed to remove any danger to Taige Mueller and (2) failing to return custody of Taige to her parents after it was even clearer that there was no imminent danger of serious bodily injury. As this Court has recognized, these holding are based upon undisputed facts. *Mueller v. Auker*, 2009 WL 3806280, *2 (D. Idaho Nov. 9, 2009) ("The State defendants argue that the Court used the wrong standard of review. The Court disagrees and notes that it relied on undisputed facts in its findings. Reviewing the Muellers' motion for summary judgment in a light most favorable to the defendants does not change the Court's prior analysis."). Accompanying this trial brief as Exhibit A is a demonstrative exhibit, based on plaintiffs' statement of undisputed facts in support of their motion for summary judgment against the State Defendants (Doc. No. 219), and the State Defendants' Response (Doc. No. 235). (A similar demonstrative exhibit based upon the City Defendants' response (Doc. No. 234) to plaintiffs' statement of undisputed facts addressed to them (Doc. No. 218) accompanies this brief as Exhibit B.) The Court was correct; the relevant facts related to those two issues are undisputed. Ex. A ¶¶ 27, 30, 31. Thus, the only issue remaining for these violations is whether plaintiffs are entitled to declaratory or injunctive relief.

The remaining claim against the official capacity State Defendants is whether they violated the Muellers' right to be together during medical treatment.[1] As to that claim, the

---

[1]     This Court has referred to this claim as a "post-deprivation notice" claim, although it has made clear that the notice *after* the deprivation was primarily for the purpose of facilitating a family's right to be together during medical treatment. *Mueller v. Auker*, 2007 WL 1667594, *1 (D. Idaho June 7, 2007) (rejecting State Defendants' motion for reconsideration because "[t]he Court decided that notice was required not simply to provide an opportunity to be heard but also to effectuate the liberty interest in parental rights and family association during medical treatment."); *id.* at *3 (rejecting City of Boise's argument that notice would not have provided

(continued...)

dispute seems to revolve largely around what was said when Barbara Hamon spoke to Eric

Mueller.  What does not appear to be disputed is that the call came around 3:00 a.m., and, as this

court has found, that was too late for Eric Mueller to exercise his right to be with his daughter.

*Mueller v. Auker*, 2007 WL 1667594, *3 (D. Idaho June 7, 2007):

> The City claims that Eric did receive post-deprivation notice from
> Barbara [Hamon] who worked for the State. The City cites
> plaintiff's Statement of Undisputed Facts at paragraph 36.
> However, that paragraph states that the call came "around 3:00
> a.m. on August 13th," which was also the same time when Dr.
> Macdonald was conducting the spinal tap. *See Memorandum
> Decision* at p. 18.  Thus, [Hamon's] call would not have allowed
> Eric to effectuate his right of family association to be present at the
> Hospital during Taige's treatment.

Plaintiffs acknowledge that, in the Court's most recent decision, it granted the State

Defendants' motion for reconsideration and concluded that there was an issue of fact as to

whether or not adequate notice was provided.   It did so, apparently, because "[t]he Court did not

consider these facts [related to Hamon's 3:00 a.m. phone call] in granting summary judgment to

the Muellers on Eric's post-deprivation notice claim while denying the State defendants'

cross-motion for summary judgment on that claim."  *Mueller v. Auker* ,  2009 WL 3806280, *2

(D. Idaho Nov. 9, 2009).

---

[1](...continued)
Eric with any due process because notice was required "to effectuate Eric's and Taige's
substantive liberty interest in parental rights and family association during medical treatment").
Plaintiffs prefer to refer to this right as the substantive right to be together during medical
treatment since it makes clear that plaintiffs are *not* alleging that the State Defendants did not
provide them with notice of the upcoming hearing in state court (which was not, in any event,
their obligation under state law).

No one disputes that Hamon's call came around 3:00 a.m.  Plaintiffs have disputed the contents of the conversation, but were willing to concede that the contents were as the State Defendants claimed for purposes of plaintiffs' own summary judgment motion.  The State Defendants had a number of responses to Paragraph 36 in their "Statement of Disputed Facts" (Doc. No. 235) in response to plaintiffs' undisputed facts (*see* Ex. A ¶ 36).  But they explained, in the fall of 2009, that, the title of their document notwithstanding, their responses to the facts in paragraph 36 "add clarification concerning the legal significance of the facts but do *not* dispute those facts."  Doc. No. 355 at 7 n.2 (emphasis in original).[2]

Thus, the salient fact about Hamon's notice remains the same as the Court noted three years ago: it came too late for Eric to exercise his right to be with his daughter during the medical treatment that was being administered to her.

The granting of declaratory relief is within the sound discretion of the court exercised in the public interest.  The guiding principles are whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty giving rise to the legal proceedings.  A court declaration not only delineates important rights and responsibilities to the parties, but can be a message to the public and can have significant educational and lasting

---

[2]      Among other things, the State Defendants asserted in their response that Eric received notice from Corissa Mueller at 2:00 a.m.  Ex. A ¶ 36.  Skipping over the fact that this is inconsistent with the undisputed facts that Corissa Mueller was not allowed to use the phone until after she was released from the separate room, and that she was still in that room when April Auker came in to speak with her at 2:30 a.m. (*see Mueller v. Auker* ,  2007 WL 627620, *6, *17 (D. Idaho Feb. 26, 2007); Ex. A ¶ 22)), this Court already has noted the argument's legal insignificance.  *Mueller v. Auker*, 2007 WL 1667594, *3 (D. Idaho June 7, 2007) ("Parents are not, however, mere business entities where notice to one is notice to all under every circumstance as a matter of law.").

importance. *Oatman v. Dep't of Treasury, Internal Revenue Service*, 1996 WL 249414, *5 (D. Idaho March 29, 1996) (*quoting Natural Resources Defense Council v. United States Environmental Protection Agency*, 966 F.2d 1292, 1299 (9th Cir. 1992)). Declaratory relief can be appropriate even when the requirements of injunctive relief have not been met. *Steffel v. Thompson*, 415 U.S. 452, 463 (1974) (handbill distributor could pursue his claim for declaratory relief even if he could not show the irreparable harm that would be required for an injunction against prosecution). At least in part, this is because "[t]here is a considerable difference between *ordering* a government official to conduct his activities in a certain manner and simply *pronouncing* that his conduct is unlawful and *should* be corrected." *Presbyterian Church USA v. United States*, 752 F. Supp. 1505, 1511 (D. Ariz. 1990) (*quoting Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985) (brackets as in *Presbyterian Church*, emphasis as in *Olagues*).

Here, declaratory relief is appropriate. The decisions to authorize both emergency *and* non-emergency medical care and to maintain custody of Taige Mueller until the shelter care hearing were not some happenstance decision by a rogue employee of the Department of Health and Welfare. Rather, they were standard policies of the Department. *See* Ex. A ¶¶ 27, 31. Indeed, as to the latter, the State Defendants vigorously argued in this matter that they were required by Idaho law to maintain custody. While this Court (and the City Defendants) disagreed with that interpretation of Idaho law, *Mueller v. Auker*, 2007 WL 1667594, *2 (D. Idaho June 7, 2007) – and it would not much matter if the State Defendants were correct, since state law must yield to federal constitutional requirements – it is plain that the Department's actions were pursuant to policy. A declaratory judgment setting forth their error would clarify the law for

6

future officers of the Department and make a repeat of those mistakes less likely. It would also send a message to the public, and deter the Idaho legislature from "clarifying" the Department's obligation to maintain custody until the shelter hearing regardless of circumstances.

As for the right of parents and children to be together during medical treatment, it seems clear that the Department has no policy to effect notice to parents about upcoming medical treatment or to facilitate parents' exercise of that right.  April Auker left the hospital at about 3:00 a.m. without considering the matter.  Ex. A ¶ 28.  Hamon was simply responding to a call that Eric Mueller had made to the hospital (after his wife had called him) asking for information.  Doc. No. 219, Rosman Statement, Ex. 20 at Bates No. 71.  Accordingly, a declaratory judgment with respect to that violation is appropriate here as well.

Plaintiffs believe that the official capacity State Defendants likely will follow the law as set forth in any declaratory judgment by this Court, and, accordingly, believe that the Court may exercise its discretion in either direction as to injunctive relief.

III.    CLAIMS FOR EQUITABLE RELIEF AGAINST THE CITY OF BOISE

The requirements for declaratory or injunctive relief against a municipality are not the same as the requirements for damages.  *Chaloux v. Killeen*, 886 F.2d 247, 250-51 (9th Cir. 1989) (rejecting any "official policy or custom" requirement to foreclose a suit for prospective relief); *Trevino v. Lassen Municipal Utility Dist.*, 2009 WL 385792, * 11 (E.D. Cal. Feb. 13, 2009) (holding that terminated employee, who sought declaratory and injunctive relief, as well as damages, was entitled to summary judgment on the claim for injunctive relief; *Monell*'s

7

requirement that a plaintiff may only prevail against a state entity for Constitutional rights violations when the violation occurred pursuant to a state policy, does not apply when the plaintiff seeks only prospective relief").  Accordingly, whether a municipal policy or lack of training *caused* any violation of the Muellers' rights is unimportant so long as the policy threatens future violations.  That is, the general standards for declaratory and injunctive relief apply to municipalities.

This Court already has noted some of the testimony that support a finding that the City of Boise maintains policies that threaten violations of parents' due process rights.  Perhaps most importantly, there is strong evidence that the City of Boise believed that police officers, and not judges, should make decisions concerning whether medical neglect threatens the life of a child. *Mueller v. Auker* , 2007 WL 627620, *22 (D. Idaho Feb. 26, 2007); Ex. B ¶ 43.  In any event, no one disputes that Rogers acted consistently with the City's policy.  Ex. B ¶ 39.  There is also some significant evidence that Rogers was never trained in the use of the Emergency Medical Statute.  Doc. No. 209, Rosman St. Ex. 5 (Rogers Dep. Tr.) at 38-39 (testifying that he believed that it would two to three hours to get court authorization).  Even if the policies or omissions of the City did not cause any constitutional violation, they are sufficiently threatening of future violations to warrant equitable relief of some kind.

IV.    PEREMPTORY CHALLENGES

Under 28 U.S.C. § 1870, each party is entitled to three peremptory challenges, but the Court may consider several plaintiffs or defendants as one group or allow additional peremptory

challenges, to be exercised either jointly or separately.

Because the claims against the official capacity State Defendants should not be tried to the jury, those defendants are irrelevant for purposes of peremptory challenges. Thus, there are three plaintiffs (Eric, Corissa, and Taige Mueller) and three defendants (the City of Boise, Richard MacDonald, and St. Luke's Regional Medical Center Ltd.) who have the right to exercise peremptory challenges. Plaintiffs believe that the plaintiffs should be treated as one group and the defendants treated as one group. The primary factual issue in this matter is whether a reasonable person would have believed that Taige Mueller was in imminent danger of serious bodily injury. Each of the plaintiffs has the same interest in demonstrating that a reasonable person would not have so believed, and each of the defendants has the same interest in demonstrating the opposite. Accordingly, whatever number of peremptory challenges this Court concludes is appropriate should be granted to the plaintiffs as a group and the defendants as a group.

V.     ISSUES RELATED TO JURY INSTRUCTIONS

Plaintiffs bring issues related to three aspects of the jury instructions to the attention of the Court: the "color of law" instructions related to MacDonald, the time element of "imminent danger" instructions, and the vicarious liability instructions.

A.     "Color Of Law" Instructions

Some passages of this Court's earlier opinions suggest that it has rejected at least some of

9

the theories under which plaintiffs have argued that MacDonald acted under color of law.  *E.g.*, *Mueller v. Auker* ,  2007 WL 627620, *25 (D. Idaho Feb. 26, 2007) ("if the jurors adopt Dr. Macdonald's version of the risk assessment, he has no liability").  On the other hand, MacDonald himself moved for clarification as to whether "conspiracy" claims against him had been dismissed.  This Court did not directly answer the question as to whether a conspiracy could be found based upon the evidence, but rather held that all causes of action remained against him regardless.  *Mueller v. Auker*, 2007 WL 1667594, *4  (D. Idaho June 7, 2007) ("plaintiffs' § 1983 claim does not depend on a strict finding of conspiracy and so the Court declines to reconsider its decision").

Plaintiffs have asserted (and present in the jury instructions) four bases by which MacDonald could be deemed to have acted under "color of law."  First, either joint action or conspiracy.  Second, utilizing the City of Boise's unconstitutional procedure for treating children not in imminent danger of serious bodily injury pursuant to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940-41 (1982) (private party that utilized state processes for obtaining a prejudgment attachment acted under color of state law and could be sued under § 1983).  Third, utilizing state actors to treat Taige Mueller pursuant to *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983) (landlord that used police to effect eviction acted under color of state law).  Fourth, taking on a state function pursuant to former I.C. § 16-1612, as described in this Court's own opinion in April 2005.  Doc. No. 81 at 13 ("Because . . . the subsequent removal [of a child pursuant to former § 16-1612] [is a] function[] traditionally delegated to the state, the Muellers have adequately alleged state action [against MacDonald].")

10

To the extent that this Court has dismissed these theories as precluded by the summary judgment evidence, plaintiffs ask only that the Court state so clearly so that there is no confusion on appeal.

B.   The Time Element Of "Imminent Danger"

In its February 2007 opinion, this Court held that determining that there was an inadequate time and/or means to contact a judge was a "threshold" issue for determining whether a child was in imminent danger of serious bodily injury. *Mueller v. Auker*, 2007 WL 627620, *10 (D. Idaho Feb. 26, 2007) ("the officer's threshold task is to determine whether there is time and means to contact a judge.  Only after determining that a judge cannot be contacted . . . does the officer proceed to decide that which is constitutionally assigned to the judge otherwise").  It also held that an inadequate time to call a judge was not the sole factor to be considered.   *Id.* at *11 ("determining whether the officer had time to contact a judge is simply one factor in determining whether a failure to hold a pre-deprivation judicial hearing was a procedural due process violation.").  Plaintiffs understood these dual holdings to mean that an inadequate time to contact a judge was a necessary, but not sufficient, condition to a child being deemed in imminent danger of serious bodily injury.

Even if plaintiffs have misconstrued the Court's opinion, a subsequent Ninth Circuit decision makes plain that an inadequate time to contact a judge is, in fact, a necessary condition to a child being deemed in imminent danger of serious bodily injury.  *Rogers v. County of San Joaquin*, 487 F.3d at 1294 (9th Cir. 2007) ("Officials . . . who remove a child from its home

without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant."). Accordingly, this Court should so instruct the jury.

C.  Vicarious Liability

Plaintiffs seek an instruction that St. Luke's Regional Medical Center Ltd. is liable for any state common-law torts for which MacDonald is found liable. Although there are issues of fact related to whether MacDonald is an "actual agent," the facts related to "apparent agency" or the existence of a non-delegable duty are clear and require a jury instruction reflecting the fact St. Luke's is liable for any tortious conduct by MacDonald. On this point, though, plaintiffs have supplied alternative instructions on the question of vicarious liability.

Specifically, there is no dispute that (1) MacDonald worked for a company, Emergency Medicine, Inc., that was retained by St. Luke's to provide emergency care at the Boise Hospital, (2) Corissa Mueller reasonably believed that MacDonald worked for St. Luke's, and (3) neither MacDonald nor any employee of St. Luke's said anything to suggest that MacDonald was not an employee of St. Luke's. Doc. No. 172, Corissa Mueller Statement; Rosman Statement Ex. D, Req. To Adm. No. 8; Ex. E, Req. To Adm. No. 9. The cases cited in plaintiffs' alternative jury instructions, including the Idaho Supreme Court's recent case of *Jones v. Healthsouth Treasure Valley Hospital*, 147 Idaho 109, 206 P.3d 473 (2009), demonstrate that this is sufficient to conclude as a matter of law that MacDonald was an apparent agent as a matter of law. Similarly, St. Luke's had a non-delegable duty pursuant to its contract with Corissa Mueller (Doc. No. 172,

C. Mueller St., Ex. A & B), its obligations under the Medicare statute (Doc. No. 172, Rosman St.

Ex. E, Req. To Adm Nos. 25-26), and Idaho law.  *Herbst v. Bothof Dairies, Inc,*, 110 Idaho 974,

973, 719 P.2d 1231, 1234 (1986).


*/s/ John L. Runft*                              */s/ Michael E. Rosman*
JOHN L. RUNFT                         MICHAEL E. ROSMAN
JON M. STEELE                          CHRISTOPHER J. HAJEC
RUNFT & STEELE LAW OFFICES, PLLC     CENTER FOR INDIVIDUAL RIGHTS
1020 W. Main Street, Suite 400        1233 20th St. NW Suite 300
Boise, Idaho 83702                     Washington, DC 20036
Tel: (208) 333-8506                    Phone: (202) 833-8400
Fax: (208) 343-3246                    Fax: (202) 833-8410

<u>Certificate of Service</u>

I hereby certify that on April 27, 2010, I electronically filed the foregoing trial brief with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Marcus W. Nye (attorney for defendants April Auker, *et al.*)

Richard Hall (attorney for defendant MacDonald)

J. Walter Sinclair (attorney for defendant St. Luke' Regional Medical Center)

Kirtlan G. Naylor  (attorney for Defendant City of Boise, *et al.*)


     */s/ Michael E. Rosman*
        Michael E. Rosman