IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC MUELLER and CORISSA D. MUELLER, husband and wife, individually, and on behalf of TAIGE L. MUELLER, a minor, and on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APRIL K. AUKER, KIMBERLY A. OSADCHUK, JANET A. FLETCHER, BARBARA HARMON, LINDA RODENBAUGH, THE CITY OF BOISE, DALE ROGERS, TED SNYDER, TIM GREEN, RICHARD K. MacDONALD, and ST. LUKE'S REGIONAL MEDICAL CENTER,<br><br>Defendants. | Case No. CIV 04-399-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Muellers have filed a motion to exclude testimony by Dr. Peter Rosin,

Dr. Macdonald's expert. Dr. Rosin is a board certified emergency room physician

**Memorandum Decision & Order - 1**

who has been practicing emergency medicine for over forty years. He currently teaches emergency medicine at Harvard Medical School and the University of Arizona School of Medicine.

## ANALYSIS

**Paradigm Clash**

The Muellers seek to exclude Dr Rosen's statements regarding a "paradigm clash." On this point, Dr. Rosen stated in his report as follows:

> It is my opinion that this case represents primarily a clash in paradigms of medical science. The only explanation of the behavior of the mother that makes any logical sense is that she and the physician are so far apart on their separate understandings of medical science that it made it impossible to communicate with her, and to explain the scientific concerns about the welfare of the baby, and as well the responsibilities of the physician.

*See Report* at p. 5.

In this paragraph, Dr. Rosen is explaining "the behavior of the mother." He identifies no expertise – beyond that of any lay person – to explain behavior. If he is relying on his long experience in the emergency room, he fails to describe that experience and how he used it to explain Corissa Mueller's behavior. See *Rule 702 Advisory Committee Notes - 2000 Amendments* (expert who relies primarily on experience "must explain how that experience leads to the conclusion reached"); *see also, U.S. v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002) (citing Rule 702

**Memorandum Decision & Order - 2**

Advisory Committee Notes in requiring expert relying on experience to explain his methodology).

Thus, Dr. Rosen cannot testify as an expert on behavior under Rule 702. Testifying as a lay person under Rule 701, his testimony must be "helpful" to the jury. It is not here, because he was not a witness to the events, and would be relying largely on the same material provided to the jury. Accordingly, Dr. Rosen's opinions about Corissa Mueller's behavior must be excluded.

**Legal Testimony**

Dr. Rosen states in his report that Dr. Macdonald had various legal obligations. For example, he states that when Corissa Mueller "refused to allow the physician to act upon his experience and clinical judgment, she also did not understand that he could not accept her refusal because of Idaho law." *See Report* at p. 6. Dr. Rosen also stated that Dr. Macdonald "had a legal mandate that governed his actions. He was legally obligated to report this situation to child protective services. It was the only choice he had other than to abandon his responsibilities to the child and accept the mother's refusal." *Id*. At the end of his Report, Dr. Rosen concludes that Dr. Macdonald "behaved in the only way possible given . . .the . . .legal constraints upon him." *Report* at 12.

Here, Dr. Rosen is offering opinions on Dr. Macdonald's legal obligations.

**Memorandum Decision & Order - 3**

Experts may interpret and analyze factual evidence but may not testify about the law.  *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996).  This testimony must be excluded.

**Medical Ethics**

Dr. Rosen states in his report that Dr. Macdonald was compelled by medical ethics to act as he did.  For example, he opines that "because of . . . medical ethics," Dr. Macdonald could not accept Corissa Mueller's refusal to treat Taige, *report* at p. 12, and that he "behaved in the only way possible given . . . the . . . moral [and] ethical . . .constraints upon him."  *Report* at 12.  In his deposition, Dr. Rosen further testified about the ethical demands on Dr. Macdonald.  *See Deposition of Macdonald* at pp. 25-30.

All claims against Dr. Macdonald center on a single question:   Did he falsely exaggerate the risk to Taige in an effort to use Detective Rogers' statutory authority to deprive the Muellers of their parental rights.  Dr. Rosen's testimony on ethics says nothing about the risk to Taige or whether Dr. Macdonald falsely exaggerated that risk to Detective Rogers.  Dr. Rosen makes no claim that ethics played any role in the statistical assessment of risk that Dr. Macdonald communicated to Detective Rogers.  Hence, ethics are irrelevant and any testimony on them will be excluded.

**Memorandum Decision & Order - 4**

**Standard of Care**

Dr. Rosen states in his report that "all of Dr. Macdonald's decisions, and actions, met the standard of care." *Report* at p. 12. The standard of care is irrelevant to the single remaining issue, discussed above, regarding whether Dr. Macdonald exaggerated the risk to Taige.

Counsel for the Muellers did not ask any questions of their expert – Dr. Shapiro – concerning the standard of care. On cross examination, counsel for Dr. Macdonald asked such questions, prompting an objection by the Muellers' counsel. At a sidebar, the Court first noted that Dr. Shapiro's direct testimony was strictly limited to analyzing the risks to Taige, and did not discuss the standard of care. The Court observed, however, that Dr. Shapiro's testimony – characterizing Dr. Macdonald's assessment of the risk as so "grossly incorrect" that he must have known it to be false – raised an inference that the treatment (lumbar puncture and antibiotics) was below the standard of care. The Court allowed Dr. Macdonald's counsel to ask limited questions to dispel that inference, and she did so:

> Q [by Dr. Macdonald's counsel]  Dr. Shapiro . . .despite the fact that it is your opinion that Taige Mueller faced a very low risk of meningitis, you are not here criticizing Dr. Macdonald from the standpoint of whether he complied with the standard of care in recommending the

**Memorandum Decision & Order - 5**

> treatment that he recommended; correct?
>
> A. I don't think that he committed malpractice in terms of treating Taige Mueller.
>
> . . . .
>
> Q. And . . . you're not critical of him recommending a lumbar puncture; are you?
>
> A. Not for recommending it.
>
> Q. And you're not critical of him recommending antibiotics; are you?
>
> A. I'm not critical of him recommending the antibiotics.

*See Transcript for June 15, 2010* at pp. 227-28.

Whatever inference arose from Dr. Shapiro's direct testimony that Dr. Macdonald violated the standard of care – and at most it would be an inference because there was no such testimony given directly – the inference was dispelled entirely by this cross examination. The standard of care is not relevant to any legal issue in this proceeding. It is also not relevant in rebuttal because there is nothing to rebut – there is no testimony or inference that Dr. Macdonald violated the standard of care. So Dr. Rosen's testimony on the standard of care must be excluded.

**Memorandum Decision & Order - 6**

**Value of Statutes**

Dr. Rosen observes in his Report that "every state in the Union" has "statutes for the protection of children against neglect and abuse," and concludes that "[t]he ramifications of not having such protections were proven over and over again, until these statutes were enacted, in large measure due to the efforts of such pediatricians as Henry Kemp who were trying to prevent further deaths and horrible disabilities from being caused by neglect and abuse. The mandatory reporting of these statutes is necessary to enable physicians to practice pro-actively when they perceive a critical danger to a child" *See Report* at pp. 11-12. Dr. Rosen's report does not identify him as an expert on legislative history. Accordingly, this testimony must be excluded.

**Risk Assessment**

Dr. Rosen renders an opinion in his Report on the risk to Taige as follows: "It is clear that Taige had a serious infection, and based on my forty-six years of experience as a physician, had Taige not been treated effectively, she would have developed septicemia, meningitis, or both, and this would have ended with severe system damage or the death of the child." *See Report* at p. 12. He concludes that Dr. Macdonald "probably" saved Taige's life. *Id*.

The Muellers seek to exclude this testimony on the ground that Dr. Rosen

**Memorandum Decision & Order - 7**

never explains how his experience leads him to these conclusions.  The Court disagrees.  Earlier in the Report, Dr. Rosen explains that when Taige was first admitted "[s]he never had a bacteremia . . . but may well have had a bacterial infection that was causing her to be septic." *Id*. at p. 8.  He concludes that if Taige was left untreated, she "would have gone on to septicemia or meningitis.  By aggressively managing the child with antibiotics, any damage or further progression of this infection was prevented." *Id*. at p. 8.  Throughout his Report he identifies the material he relies upon, and explains his diagnosis based on those materials in great detail.  The Muellers were thus provided with sufficient explanation by the expert to respond with rebuttal.

The Muellers argue, however, that Dr. Rosen's testimony that Taige "probably" had meningitis or septicemia "is not reliable, scientific, or even logical." *See Muellers' Brief* at p. 8.  However, Dr. Rosen did not state that Taige "probably" had meningitis; rather, he concludes that she had a serious bacterial infection that could have turned into meningitis if not treated, and that early treatment with antibiotics "probably" saved Taige's life. *See Report* at p. 12.  Given Dr. Rosen's long experience in emergency medicine, the Court cannot find this opinion to be an "irresponsible claim" as argued by the Muellers. *See Muellers' Brief* at p. 8.

**Memorandum Decision & Order - 8**

**Opinion on Dr. Macdonald's communication with Detective Rogers**

Dr. Rosen concludes in his report, based on his review of the tapes of the incident and other materials, that "what Dr. Macdonald communicated to all of these people [including Corissa Mueller and Detective Rogers] was accurate and valid." *See Report* at p. 11. This is essentially an opinion that Dr. Macdonald's risk assessment was valid, and hence is relevant to a key issue in the case. Moreover, it rebuts the testimony of Dr. Shapiro. For these reasons, the Court will refuse to exclude the evidence.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion in limine re Dr. Rosen (docket no.400) is GRANTED IN PART AND DENIED IN PART. The motion is granted to the extent it seeks to exclude any testimony by Dr. Rosen regarding (1) Corissa Mueller's behavior; (2) Dr. Macdonald's legal or ethical obligations; (3) the standard of care, and (4) the value and/or history of statutes regarding child neglect. The motion is denied in all other respects.



DATED:  **June 18, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 10**